IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH,

CENTRAL DIVISION

| | |
|---|---|
| LYNN R., as guardian of T.R., a minor,<br><br>Plaintiff,<br><br>v.<br><br>VALUEOPTIONS, AT&T, (f/k/a SBC Communications), & SBC UMBRELLA BENEFIT PLAN NO. 1 SNET ACTIVE BARGAINING UNIT EMPLOYEE HEALTH PLAN,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:15-cv-00362-RJS-PMW<br><br>Judge Robert J. Shelby<br><br>Magistrate Judge Paul M. Warner |

Before the court are cross motions for summary judgment.[1] Plaintiff Lynn R., as guardian of T.R., brings this action under the Employee Retirement Income Security Act (ERISA).[2] Plaintiff moves for summary judgment, arguing Defendants ValueOptions (VO), AT&T, and SBC Umbrella Benefit Plan No. 1 wrongfully denied her benefits claim for her daughter's stay at Equine Journeys, a residential mental health treatment center. For the reasons discussed below, the court grants Plaintiff's Motion for Summary Judgment,[3] and denies Defendants' Motions for Summary Judgment.[4]

---

[1] Dkt. 30; dkt. 31; dkt. 32.

[2] Dkt. 2 at 5.

[3] Dkt. 32.

[4] Dkt. 30 (AT&T and the Plan); dkt. 31 (ValueOptions).

1

## BACKGROUND

As an employee of AT&T, T. R.'s father participated in the SBC Umbrella Benefit Plan NO. 1 – SNET Active Bargaining Unit Employee Health Plan (the Plan). T.R. was a beneficiary of the Plan's Point of Service (POS) Option.[5] The Plan covered Mental Health and Chemical Dependency (MH/CD) treatment. T.R. has suffered from mental health related issues, leading to stays in several mental health facilities.[6] In this case, Defendants denied T.R.'s claim for benefits to cover her treatment at Equine Journeys, a residential mental health facility located and licensed in Utah.[7] Plaintiff Lynn R. now challenges this denial. T.R.'s father and mother are divorced and Lynn R. is T.R.'s custodial parent.

The Plan administrator determines a eligibility for coverage under the Plan.[8] SBC Communications, Inc. was the Plan Administrator for the Plan as a whole, but Southern New

---

[5] *See* dkt. 30 at 5.

[6] Dkt. 32 at 5.

[7] R. at 00059.

[8] The following language from the Summary Plan Description details the Plan Administrator's role and discretion.
Plan Administrator:

> The Plan Administrator is the named fiduciary of the Plan and has the power and duty to do all things necessary to carry out the terms of the Plan. The Plan Administrator has the sole and absolute discretion to interpret the provisions of the Plan, to make findings of fact, to determine the rights and status of participants and others under the Plan, to decide disputes under the Plan, and to delegate all or a part of this discretion to third parties. To the extent permitted by law, such interpretations, findings, determinations and decisions shall be final and conclusive on all persons for all purposes of the Plan. Dkt. 30-2 at 158.

Administration:

> The Plan Administrator has contracted with third parties for certain functions, including, but not limited to, the processing of benefits and Claims related thereto. In carrying out these functions, these third-party administrators have been delegated responsibility and discretion for interpreting the provisions of the Plan, making findings of fact, determining the rights and status of participants and others under the Plan, and deciding disputes under the Plan. *Id.* at 160.

England Telephone Company (SNET) was the Plan Administrator of components of the Plan.[9] As part of its role as Plan Administrator, SNET delegated discretionary authority to VO for MH/CD claims.[10]

The Plan covered care provided at a Residential Treatment Center (RTC). Under the Plan, "RTC refers to a level of care that requires 24-hour onsite supervision as well as an array of therapeutic activities and education (as appropriate). While less restrictive than acute Inpatient care, residential treatment does have structure and rules that residents must follow to maintain their placement."[11] Two Plan sections are at issue in this case, those relating to precertification and medical necessity. The court details each in turn.

## I. Precertification

Before obtaining MH/CD treatment, Plan participants were encouraged, and in some cases required, to contact VO and obtain precertification. Specifically, the Plan stated:

> When you call the MH/CD Claims Administrator, a wide range of resources will become available to you and your covered dependents, including referrals to: psychiatrists, psychologists, psychiatric Social Workers, masters level nurses, hospitals, clinics and chemical dependency programs. The MH/CD Claims Administrator is not a crisis center, but it can help provide referrals 24 hours a day, 365 days a year.
>
> The POS Option requires review and Precertification of all MH/CD treatment. In order to receive MH/CD benefits under the POS Option, you must contact the MH/CD Claims Administrator and obtain pre-approval for (precertify) Inpatient, outpatient and non-Emergency MH/CD services . . . If you do not contact the MH/CD Claims Administrator and obtain Precertification prior to receiving your services, there will be no MH/CD benefits payable under the POS Option for these services, even if you see a Network provider. Precertification is not a determination of eligibility or guarantee of payment.[12]

---

[9] *Id.* at 161.

[10] *Id.*

[11] *Id.* at 156.

[12] *Id.* at 84–85.

3

The Plan defined precertification as: "providing required notification or obtaining required pre-approval of certain medical services such as hospitalizations while working directly with the Claims Administrator's care coordinator. Precertification is designed to help you and your dependents receive quality medical care while controlling costs."[13]

## II. Medical Necessity

In accordance with its responsibility to precertify Plan participants for MH/CD services, VO had the added responsibility of determining whether treatment was "Medically Necessary."[14] The Plan did not cover "services or supplies which in the opinion of the appropriate Claims Administrator [were] not Medically Necessary."[15] The Plan defined "Medically Necessary" as follows, with the language at issue italicized:

> Medically Necessary means, with respect to each service or supply, that the service or supply is needed and is appropriately provided, as evidenced by meeting all of the following requirements:
>
> > It is ordered by a Physician or clinician or is ordered by a chiropractor for certain chiropractic services
> >
> > It is rendered for the treatment or diagnosis of an injury, illness or disease
> >
> > It is appropriate for the symptoms, consistent with the diagnosis, *and is otherwise in accordance with generally accepted United States medical standards and professionally recognized standards*
> >
> > The prevailing opinion within the appropriate specialty is that it is accepted medical treatment and is effective for its intended use, and that its omission would adversely affect the participant's condition
> >
> > *It is furnished by a provider with appropriate training, experience, staff, and facilities to furnish that particular service or supply*

---

[13] *Id.* at 154.

[14] *Id.* at 88.

[15] *Id.*

4

> It is not mainly for the convenience of a participant or of the
> participant's Physician
>
> *It is neither educational or developmental nor Experimental or
> Investigational in nature*
>
> It is the most appropriate supply or level of service needed to provide
> safe and adequate care[16]

### III. Denial Process

Having set forth the relevant sections of the Plan, the court turns to VO's denial of T.R.'s claim. On March 8, 2012, T.R.'s father contacted VO to inquire about in-patient mental health treatment options for his daughter.[17] VO referred T.R.'s father to three facilities it deemed capable of providing treatment.[18] During the same conversation, VO notified T.R.'s father that "authorization is needed for [inpatient] behavioral healthcare" and "medical necessity info must be sent into VO" if he wished to admit his daughter for inpatient care.[19] It is not clear from the record whether Lynn R. received this information regarding precertification. Lynn R. did not seek precertification and enrolled T.R. in Equine Journeys for inpatient mental healthcare on April 3, 2012.[20] Equine Journeys was not one of the three facilities VO referred to T.R.'s father.

Seven months after T.R.'s enrollment, a representative from Equine Journeys contacted VO to inquire about benefits.[21] At that time, the representative was quoted benefits at out-of-network rates.[22] Equine Journeys again contacted VO on February 1, 2013, requesting an

---

[16] *Id.* at 151–52 (emphasis added).

[17] R. at 00042.

[18] *Id.*

[19] *Id.*

[20] Dkt. 30 at 10; dkt. 31 at 11–12; dkt. 32 at 5. Equine Journeys is a "working cattle and horse training ranch and farm," which provides inpatient mental health treatment using "equine-based treatment program[s]." R. at 00067.

[21] R. 00007.

[22] *Id.* at 00038.

5

address for claims and was told "notification is required[,] if not received claims will deny."[23] On the same day, Equine Journeys sent medical records to VO and requested a "retrospective review" for claims from April 3, 2012, through January 13, 2013.

On February 18, 2013, VO issued a Provider Summary Voucher (PSV) stating: "Required authorization is not on file for this claim submission."[24] However, after the February 18th PSV denial, VO engaged in further review of T.R.'s claim.[25] According to VO's records, on February 26, 2013, VO initially noted "there is no supporting documentation that the facility attempted to verify the member's RTC benefits and authorization requirements" and "per the member's benefit plan retro reviews are not allowed."[26] VO did not simply deny the claim, but instead forwarded the claim to the appeals manager. On February 28, 2013, the appeals manager made an "administrative decision" to allow "a medical necessity review."[27] On March 7, 2013, an administrative denial was entered for T.R.'s claim because Equine Journeys did not have "national accreditation."[28]

On March 12, 2013, VO issued a formal denial letter.[29] In relevant part, the letter stated: "This letter is to inform you that no certification or no additional certification was given for the above referenced member because: The provider is not eligible to receive reimbursement under

---

[23] *Id.* at 00055.

[24] *Id.* at 00358.

[25] *Id.* at 00010.

[26] *Id.*

[27] *Id.*

[28] *Id.*

[29] *Id.* at 00044.

the benefit plan; not nationally accredited."[30] VO further stated its decision was "based on the information in the benefits plan as outlined in the Summary Plan description."[31]

On August 30, 2013, Lynn R. appealed VO's March 12th denial.[32] In her appeal, Lynn R. claimed that nowhere in the definition of RTC or "in any other plan provision does it state the facility has to be nationally accredited."[33] Accordingly, Lynn R. argued that Equine Journeys was a state licensed facility and that VO's determination was arbitrary and capricious and an abuse of discretion.[34] Lynn R. provided VO with a copy of Equine Journeys' Utah business license, which enabled Equine Journeys to "provide residential treatment to youth clients, ages 13-18 years old."[35] Moreover, Lynn R. provided VO with the Utah Administrative Code regarding Residential Treatment Programs demonstrating that Equine Journeys was "acting within the scope of its license."[36] She then requested VO make a thorough first level member appeal review of T.R.'s claim from Equine Journeys based on the information she provided.[37]

VO upheld its denial in a letter dated October 3, 2013, stating:

> The reason for the prior denial was that there was not an authorization on file for the above dates of service. The current decision to deny your request was based on the fact that this non-participating facility is not eligible to receive reimbursement under your benefit plan because it does not have accreditation through The Commission on Accreditation of Rehabilitation Facilities (CARF) or The Joint Commission on Accreditation of Healthcare Organizations (JCAHO). Accreditation is required for the residential treatment center to be covered.[38]

---

[30] *Id.* at 00044–45.

[31] *Id.*

[32] *Id.* at 00047–50.

[33] *Id.* at 00048.

[34] *Id.* at 00049.

[35] *Id.* at 00048 (citing License, Equine Journeys, State of Utah, Department of Human Services. Office of Licensing, Residential Treatment. License Number 18974, 1 January 2012 – 31 August 2012).

[36] *Id.* at 00049.

[37] *Id.*

[38] *Id.* at 00287.

Lynn R. responded with a request for a level two member appeal review.[39] She asserted she "could not find a provision in any of the documents or plan materials which states that a provider must be accredited in order for residential mental health services to be payable."[40] Further, she claimed VO failed to "fairly consider the licensure status of the facility" before "making their coverage determination."[41]

VO issued its final denial on December 23, 2013.[42] VO stated, "[t]he current decision to deny your request was because this non-participating facility is not eligible to receive reimbursement under your benefit plan because it does not have accreditation through [CARF] or [JCAHO]. Accreditation is required for the residential treatment center services to be covered."[43] VO then asserted, "[i]n addition, our records show that the initial contact received regarding your daughters admission to Equine Journeys was received on November 20, 2012, 7 months after she was admitted."[44] VO added that "[a]ll level of appeals have been exhausted."[45] Lynn R. appealed VO's final decision to this court.

## ANALYSIS

The court now considers cross motions for summary judgment under ERISA. When considering such motions, "the factual determination of eligibility for benefits is decided solely on the administrative record, and the non-moving party is not entitled to the usual inferences in

---

[39] *Id.* at 00291–294.

[40] *Id.* at 00292.

[41] *Id.* at 00293. The court notes that in both her first and second appeal, Lynn R. also argued that VO's treatment of T.R.'s claim violated The Mental Health Parity Act.

[42] *Id.* at 00332–333.

[43] *Id.* at 00332.

[44] *Id.*

[45] *Id.*

its favor."[46] Further, the court may consider only the bases for denial the plan administrator articulated in the administrative record.[47]

The court reviews these asserted bases for denial of benefits "de novo . . . unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."[48] Where the plan gives an administrator discretionary authority, the court employs a "deferential standard of review, asking only whether the denial of benefits was arbitrary and capricious."[49] Here, the parties agree the court will review VO's denial of benefits under an arbitrary and capricious standard.[50]

Plaintiff first argues that VO did not adequately assert lack of precertification as a rationale for denial in the administrative record, and thus the court should not consider this rationale on appeal. Second, Plaintiff argues that the rationale VO did assert—lack of national accreditation—is arbitrary and capricious because this requirement did not appear in the language of the Plan. The court addresses each argument in turn.

## I. Precertification

In reviewing VO's decision to deny benefits, the court "may only consider the evidence and arguments that appear in the administrative record" and "determine whether the decision, based on the asserted rationale, was arbitrary and capricious."[51] If VO did not assert

---

[46] *LaAsmar v. Philips Dodge Corp. Life, Accidental Death & Dismemberment and Dependent Life Ins. Plan*, 605 F.3d 789, 796 (10th Cir. 2010).

[47] *See Flinders v. Workforce Stabilization Plan of Philips Petro. Co.*, 491 F.3d 1180, 1190 (10th Cir. 2007) (citations omitted), abrogated on other grounds by *Metro Life Ins. v. Glenn*, 554 U.S. 105 (2008).

[48] *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).

[49] *LaAsmar*, 605 F.3d at 796 (quoting *Weber v. GE Grp. Life Assur. Co.*, 541 F.3d 1002, 1010 (10th Cir. 2008)).

[50] *See* dkt. 30 at 16–17; dkt. 31 at 13–14; dkt. 32 at 12. The court notes that it also appears the Plan provided VO substantial discretion to construe the plan and determine eligibility. *See supra* note 8.

[51] *Flinders*, 491 F.3d at 1190 (citations omitted).

precertification as a basis for its denial in the administrative record, the court cannot consider this rationale on appeal.

"To determine whether a plan administrator considered and asserted a particular rationale, we look only to those rationales that were specifically articulated in the administrative record as the basis for denying a claim."[52] ERISA requires claim administrators to "provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant . . . ."[53] Accordingly, a claim denial must contain "[t]he specific reason or reasons for the adverse determination" and "[r]eference to the specific plan provisions on which the determination is based."[54]

Based on a review of the administrative record, the court concludes VO failed to assert precertification as a specific reason for denial in a manner calculated to be understood by the participant. Significantly, Defendants issued four denials of payment, yet in not one denial is the phrase "lack of precertification" found.

The initial denial, the February 18th PSV, went to Equine Journeys and not the participant. It is unclear, therefore, how much weight this communication should be given. But even treating this communication as if it had gone directly to the beneficiary, precertification was not articulated in a manner calculated to be understood by the participant. This denial stated in a footnote in fine print "HQ – Required authorization is not on file for this claim submission."[55]

---

[52] *Id.* at 1190–91; *LaAsmar*, 605 F.3d at 801 ("In reviewing [a Plan Administrator's] decision to deny benefits, we are limited to considering only the rationale given by [the Plan Administrator] for that denial.").

[53] 29 U.S.C. § 1133.

[54] *Spradley v. Owens-Ill. Hourly Emp. Welfare Benefit Plan*, 686 F.3d 1135, 1140 (10th Cir. 2012) (quoting 29 C.F.R. § 2560.503–1(g)).

[55] R. at 00358.

The PSV speaks of "authorization" and never mentions precertification. Presumably there are a number of reasons that a "required authorization" may not be on file for a claim.

The next communication, the March 12th denial letter addressed to T.R., provides one basis for denial—Equine Journeys' lack of national accreditation. The March 12th letter stated, in relevant part, "[t]his letter is to inform you that no certification or no additional certification was given for the above referenced member because: The provider is not eligible to receive reimbursement under the benefit plan; not nationally accredited."[56] This communication clearly fails to provide lack of preauthorization as a basis for denial, as it does not mention precertification or authorization in any way.

The October 3rd denial letter does not fare much better. This letter mentions lack of authorization as a reason for prior denial, without citing to any specific prior denial or linking the lack of authorization to precertification.[57] The letter then explains:

> The current decision to deny your request was based on the fact that this non-participating facility is not eligible to receive reimbursement under your benefit plan because it does not have accreditation through The Commission on Accreditation of Rehabilitation Facilities (CARF) or The Joint Commission on Accreditation of Healthcare Organizations (JCAHO). Accreditation is required for the residential treatment center services to be covered.[58]

Finally, the December 28th denial letter states in relevant part

> The current decision to deny your request was because this non-participating facility is not eligible to receive reimbursement under your benefit plan because it does not have accreditation through The Commission on Accreditation of Rehabilitation Facilities (CARF) or The Joint Commission on Accreditation of Healthcare Organizations (JCAHO). Accreditation is required for the residential treatment center services to be covered. You, or an authorized representative, may contact ValueOptions at the number listed below to get a listing of eligible facilities.

---

[56] *Id.* at 00044.

[57] In the October 3rd letter to Lynn R., VO stated that "[t]he reason for the prior denial was that there was not an authorization on file for the above dates of services." *Id.* at 00287.

[58] *Id.*

> In addition, our records show that the initial contact received regarding your daughters[sic] admission to Equine Journeys was received on November 20, 2012, 7 months after she was admitted.[59]

This letter mentions the seven-month delay in contacting VO in a cursory manner after stating VO was denying Lynn R.'s request based on lack of accreditation. The letter does not explain why such a delay would be the basis for a denial, and again fails to mention precertification.

Defendants argue "[t]he plain language of the Plan requires precertification for residential treatment,"[60] and VO "explicitly notified T.R.'s parents . . . of the Plan's precertification requirement" prior to her admittance to Equine Journeys.[61] The issue, however, is not whether T.R.'s parents were on notice that precertification was required. The issue is whether VO articulated lack of precertification as a basis for its denial of T.R.'s claim. Based on its review of the administrative record, the court concludes VO did not. Because VO did not assert precertification as a specific reason for denial, Defendants are prohibited from asserting lack of precertification as a basis for denial during litigation.

## II. Lack of National Accreditation

Having concluded VO cannot assert precertification as its basis for denial, the court considers whether VO acted arbitrarily and capriciously in denying Lynn R.'s claim for benefits because Equine Journeys was not nationally accredited through The Commission on Accreditation of Rehabilitation Facilities (CARF) or The Joint Commission on Accreditation of Healthcare Organizations (JCAHO).

---

[59] *Id.* at 00332.

[60] Dkt. 31 at 11.

[61] Dkt. 30 at 18.

Under the arbitrary and capricious standard, "review is limited to determining whether the interpretation of the plan was reasonable and made in good faith."[62] The decision of the plan administrator will be upheld "so long as it is predicated on a reasoned basis, and there is no requirement that the basis relied upon be the only logical one or even the superlative one."[63] This deferential standard requires only that an administrator's decision be supported by "substantial evidence" in the record, meaning "more than a scintilla of evidence that a reasonable mind could accept as sufficient to support a conclusion."[64]

However, "courts have held that the imposition of new conditions that do not appear on the face of the plan constitutes arbitrary and capricious conduct."[65] ERISA requires all employee benefit plans be "established and maintained pursuant to a written instrument."[66] A written plan is required "in order that every employee may, *on examining the plan documents*, determine exactly what his rights and obligations are under the plan."[67] Thus, a plan administrator's decision to condition benefits on requirements not set forth in the plan is arbitrary and capricious.

In the administrative record, VO asserts generally that it cannot pay benefits for services provide by Equine Journeys because it is not a nationally accredited residential treatment center. In their briefing, Defendants assert VO denied Lynn R.'s claim because it determined the

---

[62] *Eugene S v. Horizon Blue Cross Blue Shield of N.J.*, 663 F.3d 1124, 1130 (10th Cir. 2011) (citation omitted).

[63] *Id.* at 1134 (quoting *Adamson v. UNUM Life Ins. Co. of Am.,* 455 F.3d 1209, 1212 (10th Cir. 2006) (internal quotation marks omitted)).

[64] *Id.* (internal quotation marks omitted).

[65] *Id.* Courts have employed four questions to aid in determining whether an administrator's actions are arbitrary and capricious: "(1) Is the interpretation the result of a reasoned and principled process? (2) Is it consistent with any prior interpretations by the plan administrator? (3) Is it reasonable in light of any external standards? And (4) is it consistent with the purposes of the plan?" *Geddes v. United Staffing All. Employee Med. Plan*, 469 F.3d 919, 929 (10th Cir. 2006). The parties did not directly address these factors in their briefing or at oral argument. The parties' arguments focused on whether the national accreditation requirement was a new condition, or instead a reasonable interpretation of the Plan language. The court, therefore, does not directly address these factors, but addresses the argument raised by the parties.

[66] 29 U.S.C. § 1102(a)(1).

[67] *Cirulis v. UNUM Corp.*, 321 F.3d 1010, 1013 (10th 2003) (internal quotation marks omitted).

treatment was not medically necessary, as defined by the Plan. Nowhere does the Plan state a provider must be nationally accredited for the treatment to be medically necessary. Instead, relevant to this issue, treatment is medically necessary under the Plan if it is provided "(1) in accordance with generally accepted United States medical standards and professionally recognized standards," and (2) "furnished by a provider with appropriate training, experience, staff, and facilities to furnish that particular service." The Plan further requires the treatment be "neither educational or developmental."[68]

Defendants argue VO's "reliance on two national accreditation providers–CARF and JCAHO–to determine whether Equine Journeys' services were 'in accordance with generally accepted United States medical standards and professionally recognized standards,' and whether Equine Journeys provided 'appropriate training, experience, staff, and facilities,' is inherently reasonable."[69] The court disagrees.

VO substituted accreditation through CARF and JCAHO as a proxy for determining whether treatment is "in accordance with generally accepted United States medical standards and professionally recognized standards," and "furnished by a provider with appropriate training, experience, staff, and facilities to furnish that particular service." Instead of assessing the proposed treatment and deciding if that treatment met generally accepted United States medical standards, VO simply concluded that because Equine Journeys lacked VO's post hoc specified accreditation requirement, the treatment failed to meet the requirements of the Plan.[70] At oral

---

[68] Dkt. 30 at 21.

[69] *Id.*

[70] The court also notes that VO provided no explanation of why such a requirement was reasonable given the plain language of the Plan. Neither in the administrative record to Lynn R., nor during the appeal to this court, has VO explained why a residential treatment center must be accredited through CARF nor JCAHO for the treatment it provides to meet generally accepted U.S. medical standards. VO also has not explained why a residential treatment center must be CARF or JCAHO accredited for it to have appropriate training, expertise, staff, and facilities to furnish the required treatment.

argument, VO recognized it would be possible for a provider to satisfy the plain language of the plan—provide treatment that meets national standards and have appropriately trained staff and facilities—but not be CARF/JCAHO accredited.[71]

By using national accreditation by CARF and JCAHO as a proxy in this manner, VO did not interpret the Plan in a way that was inherently reasonable as argued by Defendants. Instead, VO imposed a new condition on coverage that did not appear on the face of the Plan. In addition, Lynn R. had no notice that VO would impose such a specific accreditation requirement based on the medical necessity language in the Plan. She may have understood that the residential treatment center must have some type of licensure or certification, but she could not have been on notice that VO would require national accreditation through one of two unspecified entities—CARF or JCAHO. The court concludes the imposition of such a condition was arbitrary and capricious.[72]

Defendants argue *Jones v. Kodak Medical Assistance Plan* requires a different outcome.[73] In that case, the plaintiff sought to precertify inpatient alcohol treatment at a residential treatment center.[74] The plan administrator declined to precertify because it concluded the inpatient care was not medically necessary. To determine medical necessity, the plan administrator relied on six criteria that were not included in the plan summary. The Tenth Circuit concluded the six criteria were part of the plan, and thus not reviewable by the court.[75]

---

[71] Recording of Oral Argument at approx. 3:19–3:22.

[72] *See Cirulis*, 321 F.3d at 1014 (holding the plan administrator's denial of severance benefits arbitrary and capricious when the plan language provided the beneficiary no notice that his benefits would be conditioned on a non-solicitation agreement, but instead made general references to an "agreement and general release").

[73] 169 F.3d 1287 (10th Cir. 1999).

[74] *Id.* at 1290–91.

[75] *Id.* at 1291–92.

As an initial matter, it is unclear the extent to which *Jones* applies here. Defendants do not argue the national accreditation requirement is part of the Plan, and thus unreviewable. Defendants argue only that requiring national accreditation is a reasonable interpretation of the Plan language. Even assuming Defendants had argued the national accreditation criteria was incorporated into the Plan and thus unreviewable, *Jones* is distinguishable. In *Jones*, the court stressed that "the Plan Summary *expressly authorized* [the plan administrator] to determine eligibility . . . according to its own criteria."[76] Here, Defendants do not argue VO was expressly authorized by the Plan to determine eligibility based on its own criteria, and point to no language in the Plan supporting such a claim. Instead, the Plan sets forth specific requirements for treatment to be deemed medically necessary and notes that the treatment must meet "all the following requirements." The plain language of the Plan requires nothing more.

Defendants nevertheless argue VO had discretion to determine medical necessity—citing language in the Plan stating "services or supplies *which in the opinion of the appropriate Claims Administrator* are not Medically Necessary" will not be covered.[77] While the *Jones* court does not set forth the plan language expressly authorizing the use of the plan administrator's criteria in that case, the broad grant of discretion found in the Plan now before the court cannot be the type of express authorization found in *Jones*. The court declines to read *Jones* so broadly. To do so would be contrary to the protections provided by ERISA.[78]

### III. Remand is Inappropriate

Having decided VO's denial was arbitrary and capricious, the court must now decide what remedy is appropriate. When a court overturns a plan administrator's decision as arbitrary

---

[76] *Id.* at 1292 (emphasis added).

[77] Dkt. 30-2 at 88.

[78] *See Alexander v. United Behavioral Health*, No. 14-cv-05337, 2015 WL 1843830, at *8 (N.D. Cal. April 7, 2015); *Mac v. Blue Cross Blue Shield of Mich.*, No. 16-cv-13532, 2017 WL 2450290, at *6–7 (E.D. Mich. June 6, 2017).

and capricious, it "may either remand the case to the plan administrator for renewed consideration of the claimant's case or . . . order an award of benefits."[79] The appropriate remedy "depends on the specific flaws in the administrator's decision."[80]

Here, remand is inappropriate. VO cannot raise precertification as a rationale for denial on remand, because it failed to raise it in the administrative record.[81] Further, the court has concluded that VO's only other asserted rationale for denial—lack of national accreditation—was arbitrary and capricious. This is not a case where the administrator failed to support its decision with adequate factual findings, or failed to explain the grounds for its decision.[82] Instead, the court has rejected the only grounds upon which VO rested its denial of T.R.'s benefits.[83] Therefore, there would be nothing for VO to consider on remand, and the court awards judgment in favor of Lynn R.

## CONCLUSION

For the reasons discussed above, the court GRANTS Plaintiff's Motion for Summary Judgment and DENIES Defendants' Motions for Summary Judgment.

In her Motion, Plaintiff requested attorney fees and prejudgment interest. Within fourteen (14) days of this Order, Plaintiff may file a motion for attorney fees and prejudgment interest. Additionally, Plaintiff shall include in this motion a calculation of the amount of

---

[79] *Flinders*, 491 F.3d at 1194 (internal citations and quotation marks omitted).

[80] *Id.*

[81] *See cf. Spradley*, 686 F.3d at 1142.

[82] *See Flinders*, 491 F.3d at 1194 (stating that remand is appropriate in these circumstances).

[83] *See Kellogg v. Metro. Life Ins. Co.*, 549 F.3d 818, 833 (10th Cir. 2008) ("Having rejected the sole basis upon which MetLife grounded its denial of AD&D benefits, we must reverse the judgment of the district court and remand with directions to enter judgment in favor of Kellogg on the administrative record."); *Spradley*, 686 F.3d at 1142 (refusing to remand when the case before the court did not "involve inadequate findings or an inadequate explanation of grounds for the decision; rather, the Plan administrator gave a reason for denying benefits that was simply incorrect under the terms of the Plan").

benefits due to Lynn R., including the amount of proposed prejudgment interest. Defendants may respond to Plaintiff's motion, per the local rules.

SO ORDERED this 22nd day of August, 2017.

BY THE COURT:

ROBERT J. SHELBY
United States District Judge